Filed 5/30/24; certified for publication 6/25/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| XINGFEI LUO,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>EUGENE VOLOKH,<br><br>Defendant and Respondent. | B323878<br><br>(Los Angeles County<br>Super. Ct. No. 22STRO05198) |
| XINGFEI LUO,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>EUGENE VOLOKH,<br><br>Defendant and Respondent. | B324566<br><br>(Los Angeles County<br>Super. Ct. No. 22STRO04352) |

Case No. B323878, on APPEAL from orders of the Superior Court of Los Angeles County, Laura Cohen, Commissioner. Affirmed in part and dismissed in part.

Case No. B324566 on APPEAL from orders of the Superior Court of Los Angeles County, Hillary Gerber, Commissioner. Dismissed.

Xingfei Luo, in pro. per., for Plaintiff and Appellant.

Schaerr Jaffe, Donald M. Falk, Annika B. Barkdull; Eugene Volokh for Defendant and Respondent.

——————————————————

This is a consolidated appeal in which the parties battle over the use of pseudonyms in public documents. Appellant Xingfei Luo, also known as Olivia Luo, twice sought a restraining order against respondent Professor Eugene Volokh pursuant to Code of Civil Procedure[1] section 527.6. Luo sought to prevent Volokh from identifying her in his writings. After the trial court discharged the first petition, Luo moved to "strike" exhibits she filed in support of that failed petition. The trial court denied that motion and granted Volokh's motion to preclude her from proceeding pseudonymously in that case. Luo challenges these orders on appeal.

The second case before us involves Luo's second petition for a restraining order in which the trial court granted Volokh's anti-SLAPP (strategic lawsuit against public participation) motion (section 425.16) and dismissed Luo's second petition. On appeal, Luo argues the trial court erred in ruling she failed to demonstrate that her petition has minimal merit, an analytic

_____

[1] Undesignated statutory citations are to the Code of Civil Procedure.

element in an anti-SLAPP motion.  Luo also appeals from a subsequent order granting Volokh's motion to preclude Luo from proceeding pseudonymously in her second petition.

We address on the merits only the trial court's rulings on the anti-SLAPP motion.  We conclude that Luo failed to identify evidence of harassment within the purview of section 527.6 and the relief she requested regarding Volokh's failure to refer to her by a pseudonym is not available under that statute.  We thus affirm the order granting Volokh's anti-SLAPP motion and dismissing Luo's second petition.

We dismiss Luo's appeals as to the trial court's ruling on her motion to strike exhibits in her first petition and the court's granting of Volokh's motions in both cases to use her actual name.  We do so because these rulings are based on nonappealable orders.

## BACKGROUND

Our Background is detailed because the procedural events in these consolidated appeals are relevant to their resolution.

Volokh wrote a law review article about pseudonymous litigation in which he identified "legal rules (such as they are) and the key policy arguments, in a way intended to be helpful to judges, lawyers, pro se litigants, and academics." (Volokh, *The Law of Pseudonymous Litigation* (2022) 73 Hastings L.J. 1353.) Volokh favors "openness" to allow "the public (usually through the media) [to] supervise what happens in courtrooms that are publicly funded and exercise coercive power in the name of the people." (*Id*. at p. 1361.)  "The Volokh Conspiracy," Volokh's online blog, contains posts focusing on pseudonymous litigation including one entry that focuses exclusively on Luo.

Volokh describes the writings Luo challenges as "reporting on the contents of public records." According to Volokh, he referred to Luo by her full name in his law review article in the Hastings Law Journal and by her last name on three blog posts. The law review article and blog posts refer to Luo as an example of a litigant whose use of pseudonymity impedes investigation into the litigant's trustworthiness and past litigation. (Volokh, *The Law of Pseudonymous Litigation, supra,* 73 Hastings L.J. at p. 1370.)

## 1. *Luo's first petition for a restraining order (case no. B324566)*

Luo's July 2022 petition for a section 527.6 civil harassment restraining order in case B324566 is not included in the appellate record. Our record contains the following notation: the "request for civil harassment restraining orders-sealed." (Boldface & capitalization omitted.) Luo asserts the appellate record incorrectly shows that her petition was sealed, but she does not provide us with a copy of her petition. The parties agree that Luo filed exhibits in support of her petition, but those exhibits are not included in the appellate record.

The trial court denied Luo's civil harassment petition, concluding in part that the alleged harmful conduct was "likely protected free speech." The court also found the alleged facts did not comprise acts of violence, threats of violence, or a course of conduct that seriously alarmed, annoyed, or harassed the petitioner and caused substantial emotional distress.[2] On August 9, 2022, the trial court discharged Luo's request for a

---

[2] The text of section 527.6 is set forth in our Discussion, *post.*

4

restraining order. Luo did not appeal from the order discharging that petition.

On August 10, 2022, Luo filed an ex parte motion to set aside the order discharging her petition in which motion she claimed she was unable to personally serve Volokh. The court denied the ex parte motion.

On September 1, 2022, Luo filed an "ex parte application for an order to strike and withdraw improperly filed exhibits." (Capitalization omitted.) This motion referred to the exhibits Luo filed in support of her petition. She sought to strike them because they were not filed under seal. In a declaration, Luo averred that "[i]f the improperly filed exhibits remain available to the public, I will be subject to unwarranted public scrutiny and harassment."

On September 2, 2022, Volokh filed an opposition to Luo's motion to strike her exhibits. According to Volokh, the exhibits were relevant to Luo's petition and contained accurate copies of public records. Volokh argued Luo failed to follow rules of court for sealing documents and cannot establish the requisite standard for sealing under those rules. (See Cal. Rules of Court, rules 2.550–2.551 [describing criteria for filing documents under seal]). Volokh also argued Luo's exhibits were relevant to assessing whether Luo is a vexatious litigant and that the exhibits should not be retroactively sealed.[3]

---

[3] We take judicial notice of the trial court's order dated April 8, 2024 in *Luo v. Czodor* (2023, No. 30-2023-01327847-CU-FR-CJC). (Evid. Code, § 459, subd. (a) [reviewing court may take judicial notice of any matter specified in § 452]; Evid. Code, § 452, subd. (d) [court may take judicial notice of records of any court of

On September 6, 2022, the trial court denied Luo's ex parte motion to "strike" her exhibits because Luo had not completed the proper forms for submitting an ex parte motion. Luo filed a new motion and Volokh again opposed it, and also filed a separate motion to preclude Luo from proceeding pseudonymously in that case. Luo opposed Volokh's motion. She argued Volokh's motion was untimely and her need for anonymity outweighed the public's interest in knowing her identity. Luo further contended that privacy interests may trump the public's right to know a litigant's identity and courts should provide a safe space in which plaintiffs can be heard.

By minute order dated October 31, 2022, the trial court denied Luo's motion to strike her exhibits. The court stated the ruling was without prejudice to Luo filing a motion to seal the exhibits. Luo, however, never filed a motion to seal the exhibits. Luo filed a notice of appeal from the minute order denying her motion to strike her exhibits. The minute order does not require either party to file a formal order for court approval.

By minute order dated November 7, 2022, the trial court granted the motion to preclude Luo from proceeding pseudonymously. The court found Luo did not have a credible safety concern justifying proceeding pseudonymously. In a minute order, the court directed Volokh to prepare a written order. That same day, Luo appealed from the minute order precluding proceeding pseudonymously. Our record does not show whether Volokh filed a proposed order or whether the court signed such an order.

---

this state].) The order declares Xingfei Luo, also known as Olivia Luo, a vexatious litigant.

6

## 2. *Second petition for a restraining order (case no. B323878)*

On August 17, 2022 (eight days after the trial court discharged her first petition for a restraining order), Luo filed another petition for a civil harassment restraining order. Luo described the parties' relationship as follows: "Volokh has learned my info through litigation." Luo stated, "Volokh has published my info online and invited ha[t]ers to stalk, harass, threaten and commit violence against me. I continue to receive threatening and harassing phone calls and voice mails calling me cunt, slut, lying on men and indicating they will rape and kill me. At the end of July, I was forced to move out of my prior residence for safety concern."

Luo requested the trial court order Volokh to "[1] Remove any remarks, comments, or references from any publicly available documents or articles authored by [Volokh] that connect [her] real name with rape or sexual assault; [¶ 2] Remove any remarks, comments, or references from any publicly available documents or articles authored by [Volokh] that connect [her] with the cases in which she has received a protective order to proceed under a pseudonym; [¶ 3] Cease publishing any remarks, comments, or references that connect [her] with rape or sexual assault; [¶ 4] Cease drawing public attention to [her] name [when] associated with rape or sexual[ ] assault."

In a declaration filed in support of her petition for a restraining order, Luo averred that two unidentified persons telephoned her calling her "cunt, bitch, slut, lying on men" and threatening to rape and kill her. Luo did not know the callers' identities but assumed the callers read Volokh's writings. Luo, however, provided no evidence linking the callers to Volokh's

7

writings. Luo averred that although she received court orders protecting her name because she was a victim of rape, Volokh published her name. Luo identifies no such court orders. Luo averred Volokh's "publication invites worldwide haters to threaten, stalk, and commit violence against me." Luo offered no citation to Volokh's writings supporting this assertion. Luo further averred she relocated because of these safety concerns.

On September 2, 2022, Volokh filed a response along with an anti-SLAPP motion, arguing the First Amendment protected the writings challenged in Luo's petition. Specifically, Volokh argued Luo's petition was based entirely on his constitutionally protected speech, which could not be restrained under section 527.6. Among other things, Volokh argued Luo could not demonstrate minimal merit because his writings are not within the definition of harassment in section 527.6.

Volokh also filed a motion similar to one he filed in the earlier case to preclude Luo from proceeding pseudonymously. Volokh contended that in addition to previously attempting to obtain a restraining order against him, Luo has filed numerous cases using a pseudonym, and according to Volokh, has been unsuccessful in at least four of them. Volokh argued that Luo's identity was relevant to assess whether she is a vexatious litigant.

The trial court held a hearing on September 9, 2022. At that hearing, the trial court inquired whether Luo wanted to proceed with the anti-SLAPP motion that day or wait for a separate hearing. Luo responded, "Whatever the court prefers." Luo told the court she would not be calling witnesses or providing additional evidence. The court, on its own motion, continued the hearing on the anti-SLAPP motion. Luo filed her opposition to

the anti-SLAPP motion on September 19, 2022 in which she argued the three-week delay (caused by the court's continuance) in considering Volokh's anti-SLAPP motion demonstrated that the motion was an abuse of process.[4]  Luo argued her petition for a restraining order had minimal merit and therefore the court should deny Volokh's anti-SLAPP motion.  Luo reasserted, unsupported by citation to evidence, that "Volokh's massive publication serves the purpose of incitement to entice haters to stalk, harass, threaten, and commit violence against Petitioner." Luo also stated without citation to evidence that "as a result of Volokh's continuing massive publication, Petitioner has been forced to endure malicious and cruel abuse at the hands of ruthless and unscrupulous people."

At a September 30, 2022 hearing, the trial court noted Luo did not timely file her opposition to the anti-SLAPP motion but exercised its discretion to consider the opposition nonetheless. After the hearing, by minute order dated and signed on September 30, 2022, the court granted Volokh's anti-SLAPP motion and dismissed Luo's petition for a restraining order.  On October 3, 2022, Luo appealed from the order.

On October 10, 2022, Luo filed an opposition to Volokh's motion to preclude proceeding pseudonymously.  Luo argued that using her name would "draw" violence and harassment to her. Luo contended, "[C]ourts must provide a safe space for plaintiffs' stories to be heard . . . ."  Luo cited no evidence supporting the

_____

[4]  On our own motion we take judicial notice of Luo's opposition to the anti-SLAPP motion, which was not included in the record on appeal, but which Luo provided to us in an attachment to a brief.  (Evid. Code, § 451, subd. (d) [court may take judicial notice of the record of any court of this state].)

9

conclusion that requiring her to use her name would lead to violence and harassment against her. Luo also argued she was not a frequent or vexatious litigant.

On October 25, 2022, the trial court held a hearing on the motion to preclude Luo from proceeding pseudonymously. Luo argued that if the motion had been heard prior to the anti-SLAPP motion—a request she never made—she "could have had an opportunity to . . . withdraw from this lawsuit." The court asked, "[B]efore I rule[, ¶] . . . [¶ d]id you want an opportunity to withdraw . . . ?" Luo indicated that she did not want to withdraw. The court asked a second time, "[A]re you asking . . . to have an opportunity to withdraw?" Luo responded, "No, Your Honor." After additional discussion, the court asked a third time whether Luo wanted to withdraw and informed Luo, "I'm giving you that opportunity now." Luo responded, "No." When issuing its ruling the court stated, "[T]oday, the court gave you [Luo] an option to dismiss and you are not dismissing this case at this time, so the court will proceed with this motion." The court granted the motion to preclude Luo from proceeding with a pseudonym, finding that Luo did not show an interest that overrides the First Amendment right to public access to judicial proceedings.

By minute order dated October 25, 2022, the court granted Volokh's motion to preclude proceeding pseudonymously and directed Volokh to prepare a proposed order. Our record contains no further order signed by the court. On November 2, 2022, Luo filed a notice of appeal from the trial court's October 25, 2022 minute order.

## DISCUSSION

### A. The Trial Court Did Not Err In Granting Volokh's Anti-SLAPP Motion[5]

"The Legislature enacted Code of Civil Procedure section 425.16 to combat 'a disturbing increase' in strategic lawsuits against public participation (SLAPPs): 'lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' [Citation.]" (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1242 (*Geiser*).) "[O]ur legal tradition recognizes the importance of speech and other expressive activity even when—perhaps especially when—it is uncomfortable or inconvenient. The Legislature enacted the anti-SLAPP statute to safeguard that tradition against those who would use the judicial process to chill speech they oppose." (*Id.* At p. 1256.) An anti-SLAPP motion may be filed to challenge a petition for injunctive relief under section 527.6. (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 641; see *Olson v. Doe* (2022) 12 Cal.5th 669, 678–679 (*Olson*).)

Evaluating an anti-SLAPP motion requires a two-pronged inquiry. The moving party has the initial burden to show that the opposing party's claim implicates activity protected by the anti-SLAPP statute. (*Billauer v. Escobar-Eck* (2023)

---

[5] An order granting an anti-SLAPP motion is appealable. (§ 904.1, subd. (a)(13).) An order dismissing a petition for a restraining order is appealable because it is akin to an order denying an injunction. (See *R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 187 [holding that civil harassment restraining order is appealable as an order granting an injunction; § 904.1, subd. (a)(6) [order granting or refusing to grant an injunction is appealable].)

11

88 Cal.App.5th 953, 962–963 (*Billauer*).) The anti-SLAPP statute encompasses " 'any . . . conduct in furtherance of the exercise of the constitutional right . . . of free speech in connection with a public issue or an issue of public interest' [citation]" (*Geiser*, *supra*, 13 Cal.5th at p. 1243) and allows a trial court to strike a claim based on such conduct unless the claim has minimal merit. If the moving party satisfies that burden, the burden shifts to the opposing party to demonstrate "the merit of the claim by establishing a probability of success. . . . [T]his second step [is] a "summary-judgment-like procedure." [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] "[C]laims with the requisite minimal merit may proceed." ' [Citation.]" (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.)

We review an order granting an anti-SLAPP motion de novo. (*Billauer*, *supra*, 88 Cal.App.5th at p. 962.) Even though our standard of review is de novo, an appellant "still bears the ' "burden of affirmatively demonstrating error." ' [Citation.]" (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 671.)

Turning to the first prong of the anti-SLAPP inquiry, Luo does not dispute Volokh demonstrated that her second petition for a restraining order arises out of conduct protected by the anti-SLAPP statute. Luo therefore has demonstrated no error on appeal with respect to the first prong. In her opposition filed in

12

the trial court, Luo also did not argue her petition falls outside the ambit of the anti-SLAPP statute.

We therefore focus on the second prong and conclude upon our review de novo, that Luo failed to demonstrate her petition for a restraining order has minimal merit. "To succeed in opposing a special motion to strike, the nonmoving party must 'demonstrate both that the claim is legally sufficient and that there is sufficient evidence to establish a prima facie case with respect to the claim.' [Citation.]" (*Olson*, *supra*, 12 Cal.5th at p. 679.) As set forth below, Luo presented no evidence Volokh harassed her within the meaning of section 527.6, and the only relief Luo seeks is not available under section 527.6.

Section 527.6 provides an expedited procedure to prevent harassment. (*Byers v. Cathcart* (1997) 57 Cal.App.4th 805, 811.) By definition, harassment must have " 'no legitimate purpose.' " (*Id*. at p. 807.) "Legitimacy of purpose negates harassment." (*Id*. at p. 812; *Yost v. Forestiere* (2020) 51 Cal.App.5th 509, 521–522 [following *Byers*].) Constitutionally protected activity also is excluded from the definition of harassment. (*Yost*, at p. 522; § 527.6, subd. (b)(1).) A court must find harassment by clear and convincing evidence before issuing an order prohibiting the harassment. (*Yost*, at p. 522.)

Section 527.6 defines harassment as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3).) A course of conduct is defined

13

as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or email." (§ 527.6, subd. (b)(1).)

Volokh's conduct is not within the ambit of section 527.6's definition of harassment. Volokh's identification of Luo in a law review article and on his blog was not unlawful violence or a credible threat of violence. There was no evidence that Volokh stalked Luo, made harassing phone calls, or sent her harassing correspondence. Volokh's writings served a legitimate purpose—a discussion on how a litigant's use of a pseudonym could affect open access to court proceedings and impede investigations into a litigant's credibility. Luo's failure to cite to any evidence that Volokh harassed her within the meaning of section 526.7 is fatal to her argument that she demonstrated her restraining order petition has minimal merit.

Additionally, Luo fails to offer any theory supporting the relief her petition seeks. Injunctive relief under section 527.6 is designed to "prevent threatened future harm" and " 'is not intended to punish the restrained party for past acts of harassment.' [Citation.]" (*Olson*, *supra*, 12 Cal.5th at pp. 673, 678.)

The statute focuses "narrowly" on "interpersonal conflict." (*Olson*, *supra*, 12 Cal.5th at p. 682.) A section 527.6 restraining order may enjoin a "party from harassing, intimidating, molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, abusing, telephoning, including, but not

14

limited to, making annoying telephone calls, as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, or coming within a specified distance of, or disturbing the peace of, the petitioner." (§ 527.6, subd. (b)(6)(A).) Luo did not request the trial court enjoin Volokh from any such proscribed activities. Nothing in the statute precludes Volokh's identification of Luo by name. Because the relief Luo seeks is not available under section 527.6, her petition for a restraining order lacks the minimal merit necessary to withstand Volokh's anti-SLAPP motion.

Luo's contrary arguments are unpersuasive. She states, "If the writings, intentionally or inadvertently, embolden others to engage in harassing behavior towards Luo, they undermine any claim to legitimacy. Furthermore, if they perpetuate harmful stereotypes their purported legitimacy diminishes further." These arguments rest on incorrect factual premises because the record does not support Luo's belief that Volokh encouraged anyone to harass Luo. Luo provides no citation to any writing showing Volokh encouraged harassment or violence against her. Similarly, Luo cites no evidence that Volokh's writings "perpetuate harmful stereotypes," and we find none. (See *Newport Harbor Offices & Marina, LLC. v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28, 50 [party opposing anti-SLAPP motion has the burden to show how evidence supports prima facie case].)

Luo states Volokh's writings are widely available and the "information, when in the wrong hands, can be weaponized to incite violence or harassment against a victim, such as Doe [Luo]." Luo argues Volokh has subjected her to "unnecessary

public exposure and incitement." Again, Luo offers no evidence to support these assertions. Because there is no evidence Volokh encouraged others to commit violence or harassment against Luo, we do not consider whether section 526.7 could support a restraining order against someone who encourages others to harass.

Finally, there is no merit to Luo's contention we should reverse the trial court's anti-SLAPP ruling because Volokh's anti-SLAPP motion delayed proceedings. Without objection from the parties, the trial court continued the proceedings from September 9, 2022 to September 30, 2022, "so that it may properly address the Anti-SLAPP relief sought by" Volokh. Luo filed her opposition to the anti-SLAPP motion on September 19, 2022. A three-week delay to give Luo opportunity to file an opposition and the court time to consider the motion and opposition is not abusive delay. Although, as Luo points out, it is possible to abuse the anti-SLAPP procedure by filing a frivolous appeal (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 195), Volokh did not file a frivolous appeal. He filed a meritorious anti-SLAPP motion in the trial court.[6]

---

[6] Volokh does not request attorney fees and therefore we do not consider his entitlement to fees. Given our conclusion that Luo's petition lacked minimal merit, we do not consider Volokh's other arguments supporting the trial court's ruling. We also do not address arguments that issuing a restraining order would violate Volokh's First and Second Amendment rights. Although Volokh discusses the tort of invasion of privacy, we do not consider that argument because Luo's petition was based on section 526.7 and not a privacy cause of action.

Luo argues the trial court's reasons for finding no minimal merit constituted "plain error." We do not consider the trial

16

## B. We Dismiss Luo's Remaining Purported Appeals Because Luo Seeks Review of Nonappealable Orders

The right to appeal is statutory and a purported appeal from a nonappealable order must be dismissed because appellate courts have no jurisdiction to consider appeals that are not statutorily authorized.[7] (*In re Marriage of Griffin* (1993)

---

court's rationale because we have independently reviewed whether Luo's petition has minimal merit. (See *Maleti v. Wickers* (2022) 82 Cal.App.5th 181, 202–202 [we review the trial court's decision, not its rationale.)

[7] Section 904.1 provides:

"(a) An appeal, other than in a limited civil case, is to the court of appeal. An appeal, other than in a limited civil case, may be taken from any of the following:

"(1) From a judgment, except an interlocutory judgment, other than as provided in paragraphs (8), (9), and (11), or a judgment of contempt that is made final and conclusive by Section 1222.

"(2) From an order made after a judgment made appealable by paragraph (1).

"(3) From an order granting a motion to quash service of summons or granting a motion to stay the action on the ground of inconvenient forum, or from a written order of dismissal under Section 581d following an order granting a motion to dismiss the action on the ground of inconvenient forum.

"(4) From an order granting a new trial or denying a motion for judgment notwithstanding the verdict.

"(5) From an order discharging or refusing to discharge an attachment or granting a right to attach order.

17

"(6)  From an order granting or dissolving an injunction, or refusing to grant or dissolve an injunction.

"(7)  From an order appointing a receiver.

"(8)  From an interlocutory judgment, order, or decree, made or entered in an action to redeem real or personal property from a mortgage thereof, or a lien thereon, determining the right to redeem and directing an accounting.

"(9)  From an interlocutory judgment in an action for partition determining the rights and interests of the respective parties and directing partition to be made.

"(10)  From an order made appealable by the Probate Code or the Family Code.

"(11)  From an interlocutory judgment directing payment of monetary sanctions by a party or an attorney for a party if the amount exceeds five thousand dollars ($5,000).

"(12)  From an order directing payment of monetary sanctions by a party or an attorney for a party if the amount exceeds five thousand dollars ($5,000).

"(13)  From an order granting or denying a special motion to strike under Sections 425.16 and 425.19.

"(14)  From a final order or judgment in a bifurcated proceeding regarding child custody or visitation rights.

"(b)  Sanction orders or judgments of five thousand dollars ($5,000) or less against a party or an attorney for a party may be reviewed on an appeal by that party after entry of final judgment in the main action, or, at the discretion of the court of appeal, may be reviewed upon petition for an extraordinary writ." (§ 904.1.)

18

15 Cal.App.4th 685, 687.)  In her appellate briefing, Luo failed to follow California Rules of Court, rule 8.204(a)(2)(B), which requires her to explain why the orders being appealed are appealable.  This court thus requested and received supplemental briefing in both cases.

1.    *The minute orders granting Volokh's motion to preclude Luo from proceeding pseudonymously are not appealable*

In both cases, Volokh moved to preclude Luo from proceeding pseudonymously.  In case No. B324566, by minute order dated November 7, 2022, the trial court granted the motion to preclude Luo from proceeding pseudonymously.  The court's minute order directed Volokh to prepare a written order.  That same day, Luo appealed from the minute order precluding proceeding pseudonymously.  Our record does not show whether Volokh filed a proposed order or whether the court signed such an order.

In case No. B323878, by minute order dated October 25, 2022, the court granted Volokh's motion to preclude proceeding pseudonymously and directed Volokh to prepare a proposed order.  Our record contains no further order signed by the court.  On November 2, 2022, Luo filed a notice of appeal from the trial court's October 25, 2022 minute order.

"A minute order that directs the preparation of a formal written order is not itself appealable." (*Estate of Sapp* (2019) 36 Cal.App.5th 86, 101; see also *Herrscher v. Herrscher* (1953) 41 Cal.2d 300, 304–306 [dismissing appeal where minute order called for preparation of final order and no written order was filed].)  Here Luo's appeals are from nonappealable minute orders

19

that direct the preparation of formal written orders for signature by the court.

Volokh argues this court has discretion to treat Luo's appeal of his motion as a petition for writ of mandate. Assuming we would have that discretion, we decline to exercise it.

### 2. *The minute order denying Luo's motion to strike exhibits is not appealable*

In case No. B324566, Luo noticed an appeal from an order denying her motion to strike exhibits. That order does not fall within any of the categories of appealable orders in section 904.1. (See fn. 6, *ante*.) In response to our request for supplemental briefing, Luo does not argue the trial court's order is an appealable order. Volokh asserts the order denying Luo's motion to strike her exhibits is appealable as a collateral order because it is "essentially an effort to retroactively seal those documents by removing them from the public record."

To be appealable, a collateral order must (1) finally determine (2) a matter collateral to the litigation and (3) require the payment of money or the performance of an act. (*Longobardo v. Avco Corp.* (2023) 93 Cal.App.5th 429, 432 (*Longobardo*).) In contrast to the federal law on which Volokh relies,[8] under California law, a prerequisite to a collateral order is that the

---

[8] Orders are collateral under federal law if they " '[are] conclusive, resolve important questions completely separate from the merits, and render such important questions effectively unreviewable on appeal from a final judgment in the underlying action.' [Citation.]" (*Longobardo, supra*, 93 Cal.App.5th at p. 432; see, e.g., *Doe v. Massachusetts Institute of Technology* (1st Cir. 2022) 46 F.4th 61, 65.)

order "direct[s] the payment of money or performance of an act." (*Longobardo*, at p. 434; *Sanchez v. Westlake Services, LLC* (2022) 73 Cal.App.5th 1100, 1107 [to qualify as collateral order must direct the payment of money or performance of an act]; see also *Serrano v. Stefan Merli Plastering Co., Inc.* (2008) 162 Cal.App.4th 1014, 1026 ["The collateral order doctrine holds that an order that finally determines a matter that is distinct and severable from the main issues in the proceeding and that directs the payment of money or performance of some other act is appealable."]; but see *Muller v. Fresno Community Hospital & Medical Center* (2009) 172 Cal.App.4th 887, 905 [finding an order denying sanctions appealable as a collateral order].)

We do not agree with Volokh's description of Luo's motion. The trial court's order denying Luo's motion to strike exhibits was without prejudice to Luo filing a motion to seal the exhibits. Luo never filed a motion to seal. We will not deem Luo's motion to strike as a motion to seal when the trial court invited Luo to file a motion to seal and Luo declined that invitation. Despite having won below, Volokh contends we should review the court's ruling refusing to strike exhibits because the ruling is akin to an order unsealing documents, which he contends is appealable as a collateral order (*Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 77; *In re Providian Credit Card Cases* (2002) 96 Cal.App.4th 292, 297, fn. 2). The trial court, however, never ordered the exhibits unsealed (or sealed), and the trial court's minute order does not direct the performance of any act.

To the extent we have discretion to treat Luo's appeal as a petition for writ of mandate, we decline to exercise that discretion. Our record is inadequate for review because it

21

does not include the exhibits Luo sought to strike from the record.

## DISPOSITION

In case No. B323878, the order granting Eugene Volokh's anti-SLAPP motion and dismissing Xingfei Luo's petition for a restraining order is affirmed. The purported appeal from the order precluding Luo from proceeding pseudonymously is dismissed. The parties shall bear their own costs on appeal.

In case No. B324566, the purported appeal from the order denying Luo's motion to strike exhibits is dismissed. The purported appeal from the order precluding Luo from proceeding pseudonymously is dismissed. The parties shall bear their own costs on appeal.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.

22

Filed 6/25/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| XINGFEI LUO,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>EUGENE VOLOKH,<br><br>      Defendant and Respondent. | B323878<br><br>(Los Angeles County<br>Super. Ct. No. 22STRO05198)<br><br>CERTIFICATION AND ORDER<br>FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |
| XINGFEI LUO,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>EUGENE VOLOKH,<br><br>      Defendant and Respondent. | B324566<br><br>(Los Angeles County<br>Super. Ct. No. 22STRO04352)<br><br>CERTIFICATION AND ORDER<br>FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

The opinion in the above-entitled matter filed May 30, 2024, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in the judgment.

CERTIFIED FOR PUBLICATION.

_____

ROTHSCHILD, P. J.        CHANEY, J.        BENDIX, J.